## Case No. 2,739.

CITY BANK OF NEW-YORK v. SKELTON et al.

[2 Blatchf. 14.][1]

Circuit Court, S. D. New York. March 2, 1846.

INTERPLEADER BY BANK — ENJOINING SUIT IN STATE COURT—ENJOINING PROSECUTION IN FEDERAL COURT.

1. Upon the general principles of equity jurisprudence, a bank may, in a proper case, have relief by bill of interpleader against separate and adversary parties who claim title to moneys therein deposited.
[Cited in Foss v. First Nat. Bank of Denver, 3 Fed. 190.]

2. This court has no power to restrain or interfere with a suit prosecuted and pending in a state court, by enjoining the further prosecution of such suit.
[Cited in Fisk v. Union Pac. R. Co., Case No. 4,827; Reinach v. Atlantic & G. W. R. Co., 58 Fed. 44.]

3. But this court, in executing a jurisdiction vested in it, may, in a case of which it has cognizance, act upon parties who are suitors in a state court in relation to the same subject matter, so far at least as to compel their submission to such judgment as this court may render in the case.

4. Where funds were deposited in a bank, and afterwards S., claiming the funds as his property, commenced a suit for their recovery in a state court against the bank and Y., the depositor of the funds, and, while that suit was pending, Y. commenced two suits in this court against the bank, to recover the funds and damages for their detention, the bank having no interest in the funds: Held, on a bill filed in this court by the bank against S. and Y., that although this court would not decree an interpleader in the case, or enjoin the suit in the state court, yet it would enjoin the prosecu-

tion by Y. of his suits in this court, until the final decision of the suit in the state court.
[Cited in Foss v. First Nat. Bank of Denver, 3 Fed. 190; Harrison Wire Co. v. Wheeler, 11 Fed. 207.]

5. This court would give the parties the option to consent by stipulation to interplead in this court on the subject matter, and, in case they did so, would allow the bank to pay the funds into court, first deducting such costs and expenses as the court should allow.

In equity. This was a bill in equity filed in December, 1845, by the plaintiffs, a banking corporation in the city of New-York, against Elizabeth Skelton and Mary Ann Frazer, citizens of the west coast of Africa, and Philip R. Yonge, a citizen and resident of Georgia. The facts were these: At the instance of Lot Clark, the plaintiffs, on the 5th of July, 1844, agreed to receive on deposit for safe keeping, for a short time, and until some conflicting claims in respect to them should be adjusted, certain bonds and moneys and a promissory note. Accordingly, the said Clark, Samuel L. Burritt and Erastus C. Benedict, (the latter acting, as was alleged, on behalf of the defendant Yonge,) deposited with the plaintiffs sixteen six per cent. bonds of the United States, amounting in the whole to $52,000, with coupons attached for the payment of interest, and a promissory note of one Gibbs for $1,000, and $2,490 in cash, said to be interest previously collected on the bonds. The plaintiffs' teller, who received the deposit, delivered to Benedict, with the knowledge and concurrence of Clark and Burritt, a bank book, commonly called a dealer's book, containing this entry. "City Bank, New York, in ac. with Philip R. Yonge. Bonds deposited for collection of the interest alone, no part of the said deposit, principal or interest, to be withdrawn before the first day of September next, unless Samuel L. Burritt, of E. Florida, shall in writing request said Yonge or his attorney to withdraw the same, or some portion thereof;" and then the particulars of the deposit were stated. About the 1st of August, 1844, three of the bonds, for $3,000 each, and the note of Gibbs, were withdrawn from the bank pursuant to the above condition; and the bank subsequently received, for interest on the remaining thirteen bonds, $2,580 in cash. The bill alleged that the plaintiffs continued to hold the said assets under such deposit, without making any claim to any part of them, and had always been and were ready and desirous to deliver the same to whosoever might be entitled to them.

In August, 1844, the defendants Skelton and Frazer, by the said Clark as their solicitor, filed a bill in the court of chancery of the state of New York, against the plaintiffs and the defendant Yonge, claiming the said assets and funds as their property, as legatees and heirs at law of John Frazer, deceased, representing that the said assets belonged to and were derived solely from his estate, of which the defendant Yonge was one of the

---

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

executors, and that the executors had received other and sufficient assets to satisfy all the debts and specific legacies of the estate, and setting forth various other facts to show that the assets so deposited belonged to them and ought not to be paid over to the defendant Yonge, and praying an injunction against the plaintiffs and Yonge, and other appropriate relief. An injunction was issued by the state court, on the bill, and served on the plaintiffs, restraining them from parting with the bonds and money. They appeared in the suit and filed their answer in January, 1845, disclaiming all title to or interest in the assets, and offering to pay over the same as the court might direct. Yonge also appeared in that suit and answered the bill. The injunction was subsequently dissolved by the chancellor, leaving the subject-matter of the suit to be prosecuted between the parties as they might be advised; and the suit was still pending, undetermined, when this bill was filed. On the 3d of November, 1845, after the dissolution of the injunction, a notice in writing was served on the plaintiffs on behalf of the said heirs, to the effect that the said assets belonged to the said heirs, and that, if the plaintiffs should deliver them to Yonge, they would do so at their peril. On the 25th of November, 1845, Yonge commenced two suits at law in this court against the plaintiffs, one in trover and the other in assumpsit. In the former, he sought to recover the value of the said remaining thirteen bonds, with coupons attached; and, in the latter, damages for not delivering to him the said bonds, and for not paying to him the interest so collected thereon. Those suits, also, were pending, undetermined, when this bill was filed. The bill contained other averments usual in bills of interpleader, and prayed that the defendants might be decreed to interplead and settle their rights to the said bonds and moneys, or might proceed and determine them, if possible, in said suit in the state court of chancery; or that, on the discontinuance of the latter suit, the plaintiffs might be at liberty to pay over the assets to the parties on being indemnified by this court in so doing, or to pay the same into this court, to be disposed of as it might direct, on the discontinuance of said suit in chancery; that Yonge might be enjoined from prosecuting his suits at law, and Skelton and Frazer from prosecuting their suit in chancery; and that the plaintiffs, on paying the assets into court, might be discharged from all liability to the defendants in the premises, and have allowed to them all their costs and counsel fees in all the suits. A motion was now made, upon the bill, for provisional injunctions.

George William Wright, for plaintiffs.
Samuel Sherwood, for Skelton and Frazer.
Erastus C. Benedict, for Yonge.

BETTS, District Judge. Two questions have been discussed on this motion: (1.) Whether the facts establish a case for a decree of interpleader. (2.) Whether this court has jurisdiction to make such a decree.

The strong objection taken to the right of interpleader in this case is, that the plaintiffs received the deposit as bailees of Yonge, and became absolutely bound to him to return it at his call; and that the qualification in the deposit, that the written concurrence of Burritt should be necessary to a withdrawal of the deposit, operated only for a limited period, and ceased to have any effect after the 1st of September, 1844. Eminent judges speak of the doctrines respecting bills of interpleader as perplexing and not well defined. 2 Story, Eq. Jur. § 814, and notes. The fundamental principle upon which relief by bill of interpleader is founded is, that two or more persons are claiming the same thing by different or separate interests, of a person who does not claim any interest therein himself, and does not know to whom he ought of right to surrender it, and that one or both have brought, or threaten to bring, actions against him. In such case, he may appeal to a court of equity to protect him from the vexation attending such suits, and also from being compelled to respond to several parties for the same thing. Id. § 806; 2 Kent, Comm. 567, 568; Jeremy, Eq. Jur. 347; Eden, Inj. (1st Am. Ed.) 242; Crawshay v. Thornton, 2 Mylne & C. 1; Atkinson v. Manks, 1 Cow. 691. The defendant Yonge insists that the rule does not apply to bailees or to bankers, but that they are bound by the general principles of law to restore to the bailor the deposit made with them. 2 Story, Eq. Jur. §§ 816, 817; Story, Bailm. § 110. But the cases which seemingly support that objection are counterbalanced by a weightier array of authorities, both English and American, to the contrary. 2 Kent, Comm. 566–568; Atkinson v. Manks, 1 Cow. 691; Schuyler v. Pelissier, 3 Edw. Ch. 191; Birch v. Corbin, 1 Cox, Ch. Cas. 144; Jeremy, Eq. Jur. 348. The rule has been directly sanctioned in the cases of funds deposit in a bank (Birch v. Corbin, 1 Cox, Ch. Cas. 144), and with a stakeholder (Id. 145); and it has been applied in behalf of a captain of a vessel, against whom there were adverse claims upon bills of lading (Lowe v. Richardson, 3 Madd. 277). Each of these cases is strong in analogy to the present one, and I should feel no difficulty in declaring, upon the general principles of equity jurisprudence, that a bank may be entitled to relief by bill of interpleader against separate and adversary parties who claim title to moneys therein deposited.

But there is an impediment to the enforcement of that principle by this court in the case now before it. One of the suits pending, against which the plaintiffs ask relief, is prosecuted in the state court of chancery, and this court is clothed with no power to restrain or interfere with a suit so situated. A court of the United States, in executing

a jurisdiction vested in it, may undoubtedly act upon parties who are suitors in a state court in relation to the same subject matter, so far at least as to compel their submission to such judgment as the United States court may render in a case of which it has cognizance. But, even then, it cannot interdict their prosecuting their suit in the state court, much less control any action pending in such court. It is understood that the state courts uniformly adopt the same doctrine in respect to courts of the United States. Here it is to be assumed that the state court is competently possessed of the case before it, and a decree of this court compelling the plaintiffs and one of the defendants in that court to interplead here, would be an exercise of that authority and control over the state court itself which can only be allowed to a tribunal of general jurisdiction under the same government.

But the plaintiffs have made out a case of the most stringent equity against allowing Yonge to proceed in his suits in this court against them, while the suit brought by Skelton and Frazer is pending in the state court for the same subject-matter, and to which he is a party defendant. The conflicting rights of these two prosecuting parties are directly at issue in the suit in the state court, and that forum has full capacity to decide the right between them. There the controversy should be continued so far as these plaintiffs are to be affected, and, with the determination of that case, they should legally know to whom they can rightfully deliver over the funds in their possession.

I think the cases of Mallow v. Hinde, 12 Wheat. [25 U. S.] 193, and Dunn v. Clarke, 8 Pet. [33 U. S.] 1, furnish a guide to the order proper to be made in this case. The former was a case similarly circumstanced to the present one, and is an authority that this court may, in its discretion, restrain the prosecution of the suits brought by Yonge, until he has had an opportunity to settle his controversy with Skelton and Frazer in the suit in the state court of chancery. I shall accordingly order an injunction to that effect, giving to the parties the option to consent, by stipulation, to interplead in this court on the subject-matter, and thus place it wholly under the control of this court.

NOTE [from original report]. Order. The bill in this case having been read, and counsel for the respective parties having been heard, and the premises being fully considered, and it appearing to the court that the plaintiffs hold the assets and funds in the bill mentioned for the true owner, without having or claiming any right or interest therein, and that they are ready and willing to deliver the same over to whosoever may have right thereto; and it appearing to the court that the defendants Elizabeth Skelton and Mary Ann Frazer have heretofore filed their bill in the court of chancery of the state of New-York against the plaintiffs and the defendant Philip R. Yonge, alleging the full right and title to the said funds and assets to be vest-ed in and to belong to the said Skelton and Frazer; and it appearing to the court that the plaintiffs and the said Yonge entered their respective appearances in said suit in said court of chancery, and that said suit is still pending and undetermined; and it further appearing to the court that after such suit was instituted the said Yonge commenced in this court, in his own name, two separate actions at law against the plaintiffs, one in trover, in which he seeks to recover the value of the said funds and assets, and the other in assumpsit, in which damages are demanded for the detention of the said assets, and that the plaintiffs have appeared in the said actions, and the same are yet pending and undetermined in this court: It is, therefore, considered by the court that the plaintiffs are entitled to relief in this court in the premises; but, inasmuch as the suit instituted against the plaintiffs by the said Skelton and Frazer is prosecuted in the court of chancery of the state of New-York, and the proceedings before that tribunal are not within the cognizance of this court, or subject to its control, it is considered by the court, that so much of the prayer of the said bill as seeks an interpleader in the premises, and prays the same to be decreed by this court against the above named defendants, ought not to be granted, and it is, therefore, ordered, that the same be denied. It is further ordered, that an injunction issue, according to the prayer of the bill, against the said Yonge, restraining him from further prosecuting his said actions at law, or either of them, instituted in this court against the plaintiffs, until the final decision of the said suit pending in the court of chancery of the state of New-York, unless the said Yonge and Skelton and Frazer shall, within twenty days from the date of this order, file their stipulation in writing in this court, electing to interplead between themselves in this court, in respect to the subject matter aforesaid; and, in case of such interpleader between the said parties, it is ordered that the said plaintiffs thereupon pay into this court the funds and assets aforesaid, first deducting therefrom such their costs and expenses as shall be allowed them by the court.

[NOTE. For denial of a motion to dissolve the injunction granted by the foregoing order, see Case No. 2,740.]